**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-13199

Non-Argument Calendar

_____

RUSSELL JOHNSON,

*Plaintiff-Appellant,*

*versus*

TUSKEGEE UNIVERSITY,

GEMECHU WIRTU,

   Individually and in their official capacities,

SHAIK JEELANI,

   Individually and in their official capacities,

RUBY PERRY,

   Individually and in their official capacities,

OLGA BOLDEN-TILLER,

   Individually and in their official capacities,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:24-cv-00360-KFP

————————————

Before BRASHER, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal is about whether summary judgment was properly granted in a Title IX retaliation case. While in a Ph.D. program at Tuskegee University's College of Veterinary Medicine, Dr. Russell Johnson filed a Title IX complaint. Later, two of his thesis dissertation advisors resigned. Johnson sued, alleging that this resignation was retaliatory, breached his contractual rights, and violated various other rights. After discovery, the district court granted summary judgment for the defendants, concluding that Johnson's Title IX claims were time-barred and that his other claims were without merit. Johnson now argues that the district court erred by ignoring evidence he filed, failing to sanction Tuskegee for deleting a recorded Zoom meeting, refusing to toll the statute of limitations on his Title IX claims, and refusing to allow him to amend his breach of contract claims through summary judgment briefing. After review, we conclude that Johnson's Title IX claims were time-barred, Tuskegee did not merit spoliation sanctions, and Johnson could not amend his complaint through summary judgment briefing, so we affirm.

## I.

Johnson alleges that while he was pursuing his Ph.D. at Tuskegee, a fellow student physically assaulted and sexually harassed him on three occasions. Johnson filed several informal complaints about these interactions before filing a formal complaint that Tuskegee forwarded to its Title IX office. A Hearing Board concluded that Johnson's Title IX rights were not violated. The Title IX office sent Johnson the evidence that the Board had reviewed.

Johnson later filed a formal Title IX complaint alleging that one of his Ph.D. dissertation advisors, Dr. Ruby Perry, had retaliated against him by threatening to withdraw his funding and giving him an ultimatum to either work with the student who assaulted and harassed him or not receive his Ph.D. The Title IX office transferred Johnson's complaint to the Office of Graduate Studies and Research, explaining that it did not sound in Title IX law.

The next month, on April 29, 2022, Dr. Perry and another Ph.D. advisor, Dr. Gemechu Wirtu, resigned from their roles as Johnson's advisors. Johnson filed another Title IX complaint alleging that Wirtu and Perry's resignation was in retaliation for Johnson's protected activity of filing Title IX complaints. Around this time, Johnson participated in a recorded Zoom meeting with the Title IX coordinator, Perry, Wirtu, Johnson's father, and Tuskegee's general counsel to discuss how to resolve his complaints. The Title IX office ultimately found that Wirtu and Perry had retaliated against Johnson.

Johnson sued Tuskegee University as well as Wirtu, the Dean of the Graduate School, Perry, and a previous thesis advisor. He alleged that Tuskegee violated Title IX through its deliberate indifference to his complaints and failure follow Title IX procedures that required providing Johnson with the evidence against him before making a decision. Johnson also alleged that Perry and Wirtu violated Title IX when they retaliated against him by resigning as advisors. He also alleged that he was denied a property interest in an education without due process of law, all defendants intentionally inflicted emotional distress, and that Tuskegee breached its contract with Johnson by failing to follow the policies in the student handbook.

The parties exchanged discovery, and Johnson demanded that Tuskegee produce the recording of the Zoom meeting about how to resolve his complaints. The court ordered Tuskegee to search for the video, but Tuskegee's IT Department could not find it because Tuskegee's account settings delete recordings after sixty days. Johnson moved to compel production of the video and for spoliation sanctions. The district court denied both motions, explaining that a party cannot produce a recording that does not exist, and that Tuskegee did not violate its duty to preserve because the recording was deleted before litigation was foreseeable.

The defendants moved for summary judgment, and after briefing had closed, Johnson attempted to file a recording as evidence supporting his briefing. The district court granted summary judgment against Johnson on all claims, explaining that he could

25-13199              Opinion of the Court                    5

not assert Title IX claims against individual defendants, that the deliberate indifference and failure to comply with Title IX claims against Tuskegee were time-barred by Alabama's two-year statute of limitations, that the statute of limitations was not tolled, that Johnson could not rebut the legitimate non-retaliatory reason for Perry and Wirtu's resignation, that Johnson could not sue private parties under 42 U.S.C. § 1983, that Johnson failed to show a dispute of material fact on his intentional infliction of emotional distress claim, that the student handbook was not a binding contract, and that Johnson could not amend his breach of contract claim to assert that Tuskegee breached Johnson's research proposal by not conferring a doctorate.

Johnson timely appealed.

## II.

We review a summary judgment decision *de novo*, "drawing all inferences in the light most favorable to the non-moving party." *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1315 n.9 (11th Cir. 2024) (quoting *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023)). Summary judgment is appropriate "where there are no genuine issues of material fact," and where "the movant is entitled to judgment as a matter of law." *Id.* (first quoting *Sutton*, 64 F.4th at 1168; and then quoting FED. R. CIV. P. 56(a)). The interpretation and application of statutes of limitations is a question of law that we review *de novo*. *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1278 (11th Cir. 2005) (quoting *United States v. Clarke*, 312

F.3d 1343, 1345 n.1 (11th Cir. 2002)), *abrogated on other grounds by*, *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010).

"We review the district court's decision regarding spoliation sanctions for abuse of discretion." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943 (11th Cir. 2005). We "may affirm for any reason supported by the record, even if not relied upon by the district court." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1009 (11th Cir. 2016) (citation modified).

## III.

Johnson argues that the district court erred in four ways. First, he argues that the district court erroneously dismissed his Title IX claims as time-barred. Second, he argues that the district court overlooked important evidence of retaliation. Third, he argues that the district court erroneously denied sanctions for Tuskegee's failure to preserve the Zoom recording. Fourth, he argues that he was not amending his breach of contract claim through briefing because Tuskegee had notice that he might sue about the school's breach of his research proposal.

The defendants respond, first, that the Title IX statute of limitations had run and should not be tolled because Johnson failed to identify any continuing violation within the limitations period. Second, they argue, the district court did not ignore any evidence of retaliation that was properly before it. Third, they argue that Tuskegee had no duty to preserve the Zoom recording because no litigation was pending on the date of the recording or the deletion.

Fourth, they argue that the breach of contract claim based on Johnson's research proposal was a separate claim from that based on the student handbook, so the district court properly rejected Johnson's effort to assert such a breach. We consider each of Johnson's arguments, in turn, below.

First, the statute of limitations bars Johnson's Title IX claims, including deliberate indifference, failure to comply, and retaliation. Title IX draws from the "most closely analogous" state statute of limitations. *M.H.D. v. Westminster Schs.*, 172 F.3d 797, 803 (11th Cir. 1999) (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989)). In Alabama, the most closely analogous injury to a Title IX injury is a common law personal injury tort, *see id.*, which has a two-year statute of limitations, *see* Ala. Code § 6-2-38(a). Johnson filed this lawsuit on June 14, 2024, so any Title IX claim would have had to accrue on or after June 14, 2022. But all of Johnson's Title IX claims accrued earlier. The parties do not dispute that Johnson's deliberate indifference claim accrued when the Title IX Hearing Board found that his rights were not violated, which was March 31, 2022. Johnson's failure to comply claim accrued when he learned that Tuskegee had failed to provide him with Title IX evidence, which was April 6, 2022. And Johnson's retaliation claim accrued when his two advisors resigned, which was on April 29, 2022. Because all of his Title IX claims accrued before June 14, 2022, they are all time-barred.

Moreover, no tolling doctrine resurrects these time-barred claims. Johnson argues that the continuing violation doctrine tolls

the statute of limitations on his Title IX claims. In the context of federal statutes that do not specify a limitations period, we apply state law to determine tolling. *See M.H.D.*, 172 F.3d at 804 (applying state tolling law to Title IX claim); *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980) (applying state tolling law to section 1983 action).[1] In Alabama, the statute of limitations does not start to run on a continuing tort until a defendant engages in his last tortious act. *Ex parte Abbott Lab'ys*, 342 So. 3d 186, 196 (Ala. 2021) (quoting *Cont'l Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208, 1216 (Ala. 1990)). Johnson contends that Tuskegee's Title IX violations continued through August 2022 because that is when the Title IX office issued a decision about whether his advisors' resignation was retaliatory. But the Title IX decision favored Johnson, and Johnson's complaint was his own action. Neither was a tortious act by Tuskegee. The last allegedly tortious act by Tuskegee was when Johnson's advisors resigned, which was on April 29, 2022. This was outside the statutory limitations period, so the continuing tort doctrine does not resurrect it.

Second, because Johnson's retaliation claim was time-barred, it fails regardless of whether the district court ignored retaliation evidence. Although the district court dismissed Johnson's retaliation claim on a different ground, we may affirm for any reason

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

supported by the record. *See Lage*, 839 F.3d at 1009. Because we affirm on statute of limitations grounds, we do not examine Johnson's evidentiary argument.

Third, the district court properly refused to sanction Tuskegee for failing to preserve the Zoom recording because Tuskegee did not destroy it in bad faith. Spoliation includes the destruction of meaningful evidence. *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (quoting *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)). When deciding whether to sanction a party for destroying evidence, a federal court should consider whether the spoliating party acted in bad faith. *Tesoriero*, 965 F.3d at 1184 (citing *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018)). Bad faith means that the party destroyed documents or records to hide adverse evidence. *Id.* (quoting *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)). There is no evidence that Tuskegee had notice that there would be any litigation, undermining the idea that Tuskegee intentionally destroyed the Zoom recording to hide it from litigation. Johnson also has not explained why the Zoom meeting would be adverse evidence for Tuskegee. The district court thus did not abuse its discretion in refusing to sanction Tuskegee.

Fourth, the district court did not err when it refused to allow Johnson to add new claims through summary judgment briefing. Johnson argues that the district court should have denied summary judgment based on the theory that Tuskegee breached a contract

with him when it failed to perform the terms of his research proposal, even though that breach of contract theory was not in his complaint. A defendant has a right to "notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food & Com. Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989). So a district court need not allow a plaintiff to amend his complaint through argument in a brief opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). Because Johnson's original breach of contract claim was based on the student handbook, the district court did not err when it refused to permit Johnson to raise his new theory about the research proposal in his summary judgment briefing.

## IV.

For these reasons, the district court's judgment is **AFFIRMED.**